## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BRUCE W. KOENIG, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JKB-20-2738 |
| MARYLAND DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES, | * | |
| | * | |
| SHARON BAUCOM, Chief Medical Officer, STEPHEN T. MOYER, | * | |
| Defendants | * | |

***

### MEMORANDUM OPINION

Plaintiff Bruce W. Koenig alleges in this civil rights Complaint that defendants, the Maryland Department of Public Safety and Correctional Services ("DPSCS"), Stephen T. Moyer, former Secretary of the DPSCS ("Moyer") and Sharon Baucom, Medical Director of DPSCS ("Baucom") denied him adequate medical care. Pending is Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 23. Plaintiff did not file a Reply.[1] Having considered the submissions of the parties, the court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For reasons to follow, Defendants' motion will be granted.

### BACKGROUND

Koenig is a Maryland state inmate presently incarcerated at the Maryland Correctional Institution—Jessup ("MCIJ"). Koenig states in the Complaint that he is seventy-one years old, has multiple disabilities including deafness, visual impairment, and back problems, "necessitating

---

[1] The Clerk notified Koenig that he may file an opposition with affidavits, declarations, and verified exhibits in response to defendants' dispositive motion and that failure to do so may result in dismissal of this case or entry of judgment against him. ECF No. 24. Koenig submitted a Motion for an Extension of Time to File a Reply which this court granted. ECF Nos. 25, 26. The extended time has long passed without the filing of a Reply.

even more vigilance and movement of my head and neck in order to try to see what is being written on writing boards" during educational programming. ECF No. 1 at 2–3.

Koenig claims that he suffered headaches because he was provided improper eyeglasses for his visual impairment. He claims that although he was prescribed oversized progressive lenses, he was instead provided two pairs of glasses with regular sized lenses. Because he was provided the wrong eyeglasses, Koenig states that he has had difficulty participating in educational programming since 2015. Specifically, due to his poor eyesight and pain in his head and neck, it is difficult for him to move his head to participate in class and see the board. As a result, in 2019, he withdrew from the educational program offered by Goucher College at MCIJ. ECF No. 1 at 2–4. Koenig requests initiation of "discovery until agreed to by me and authorized by the court," appointment of counsel, and injunctive and declaratory relief. ECF No. 1 at 8–9.

Koenig administratively pursed his complaints through the administrative review process, including filing a grievance with the Inmate Grievance Office. On October 5, 2017 and April 5, 2018, an administrative law judge ("ALJ") conducted a hearing addressing: "Did any [Division of Correction] official prevent [Koenig] from obtaining eyeglasses with progressive lenses, as prescribed by an ophthalmologist, in June-July 2016, and, if so, what is the appropriate remedy?" ECF No. 23-5 at 165. In a proposed order and recommended decision in OAH No. DPSC-IGO-002V-17-19865, dated July 5, 2018, the ALJ determined that "officials" of the Division of Correction erred in handling of Koenig's request for progressive lenses, but found that "those officials did not act with deliberate indifference to [Koenig's] medical needs or violate his rights under federal statutes." *Id.* at 175, 179, 181 (discussing the ADA and Rehabilitation Act of 1973). The ALJ proposed that the Division of Correction assist Koenig to obtain adequate optometric services from subcontractor Prison Operations Systems. *Id.* at 181. The ALJ concluded that

Koenig had been provided progressive lenses since filing his grievance. *Id.* at 180. On September 17, 2018, Secretary Moyer vacated the ALJ's recommended decision and dismissed the matter based on that finding, stating that because Koenig had been provided with progressive lenses and received the relief he sought, the case was moot. *Id.* at 180, 193.

## STANDARD OF REVIEW

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

When deciding a motion to dismiss under Rule 12(b)(6), the court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defense v. Trimble Navigation Ltd.,* 484 F.3d 700, 705 (4th Cir. 2007). Courts must treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable

3

opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or an equivalent filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). Koenig did not respond to Defendants' Motion to assert that he needs additional discovery in order to address their Motion. Of import, Koenig's broadly stated request for discovery, fails to identify the evidence needed to pursue his case or why such information is material to the claims he is presenting. Under these circumstances, the court may construe defendants' motion as one for summary judgment for purposes of arguments that require consideration of the submitted declarations and exhibits.

Under Federal Rule of Civil Procedure 56, the court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the motion, the court views the facts in the light most favorable to the nonmoving party, with "all justifiable inferences" drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court may rely only on facts supported by the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is

"genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.*

This court is also mindful that because Koenig is self-represented his filings are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## DISCUSSION

As a preliminary matter, this complaint does not allege a violation of federal constitutional rights or law. In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) a right secured by the Constitution or laws of the United States was violated, and (2) the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011). Recognizing that Koenig is proceeding pro se, however, the court finds the allegations are fairly construed to bring a claim under the Eighth Amendment.[2]

### 1. Claims against DPSCS

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. The Supreme Court of the United States has construed the Eleventh Amendment to also protect states from federal court suits brought by the state's own citizens. *Lee-Thomas v. Prince George's Cty. Pub. Sch.*, 666 F.3d 244, 248 (4th Cir. 2012) (quoting *Port Auth. Trans–Hudson Corp. v.*

---

[2] This court has previously considered Koenig's allegations about his need for large lens progressive eyeglasses in the context of a claim under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, *et seq., see Koenig v. DPSCS, et. al*, Civ. No. JKB-16-1289, 2018 WL 1512999, at *9 (D. Md. 2018) (*Koenig I*) (finding Koenig had not established he was a qualified person with a disability and failed to prove any ADA violation) and *Koenig v. DPSCS*, 17-1200-JKB (*Koenig II*) (determining the claims in *Koenig II* were "nearly identical" to those in *Koenig I*, and barred under the doctrine of *res judicata*). *Id.* ECF No. 34 at 4.

*Feeney*, 495 U.S. 299, 304 (1990)). This immunity is not absolute as Congress and state legislatures may waive it. *Id.* at 249. The State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, though not to a suit of this kind. *See* Md. Code Ann., State Gov't., § 12–201 (West 2018).

State immunity extends to "state agents and instrumentalities." *Lee-Thomas*, 666 F.3d at 248 (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). DPSCS is a state agency. *See* Md. Code. Ann., Corr. Servs. § 1-101(f) (West 2018). Because DPSCS is "an arm of the state for purposes of § 1983," it is "immune from a suit under § 1983." *Clark v. Md. Dep't of Pub. Safety & Corr. Servs.*, 316 F.App'x 279, 282 (4th Cir. 2009). Here, Koenig is suing DPSCS, which is immune from suit under § 1983. The court, therefore, concludes that Koenig fails to state a claim against DPSCS as a matter of law. The claims against DPSCS will be dismissed.

**2. Eighth Amendment**

To raise a claim under the Eighth Amendment for inadequate medical care, 42 U.S.C. § 1983 requires a showing of personal fault based upon the defendant's personal conduct. *See Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (personal participation required for liability); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). *Respondeat superior*[3] is not a recognized theory of liability under § 1983. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Insofar as Koenig may intend to hold Moyer or Baucom liable based on their supervisory capacity, he fails to allege sufficient facts to state a supervisory liability claim. *Shaw v. Stroud*, 13 F.3d 791, 798–99 (4th Cir. 1994)

---

[3] *Respondeat superior* is a legal doctrine that provides an employer is liable in certain cases for the wrongful actions of his employee, and a principal for those of his agent. *See* Black's Law Dictionary (8th ed. 2004).

(outlining elements of a supervisory capacity claim); *see also* ECF No. 1 at 5-6.

To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate a defendant's action or omissions amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that (1) the prisoner was objectively suffering from a serious medical need and (2) the prison staff was subjectively aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve,* 535 F.3d 225, 241 (4th Cir. 2008).

Koenig does not allege that either Moyer or Baucom was personally involved in providing him eyeglasses. Rather, Koenig faults the "The Secretary, DPSCS" for having "overruled an ALJ's determination." ECF No. 1 at 4. Koenig faults Dr. Baucom for responding to his letters of complaint about his eyeglasses by recommending that he present his medical concerns through the sick call process. ECF No. 1 at 4-5. Moyer, who is neither a medical provider nor medically trained, states that his decision to vacate the ALJ's decision was made in reliance on the ALJ's determination that Koenig had been provided the relief he sought. Declaration of Stephen Moyer, ECF No. 26-6. Specifically, Moyer states:

> Based upon the information contained in the Finding of Fact authored by the ALJ in Mr. Koenig's case, it was my understanding that Mr. Koenig had been provided the specific glasses that he requested and had been prescribed, and did not require any additional assistance from DPSCS or myself.
>
> It is for that reason that I believed the issue was moot, and vacated the proposed order of the ALJ. I believed that Mr. Koenig's medical concerns and requests for accommodation had been properly addressed by the medical contractor and did not require any further assistance.
>
> I was not aware that Mr. Koenig believed he required additional medical assistance, nor was I aware that Mr. Koenig claimed to have suffered pain following the provision of the progressive lenses referenced in the ALJ's Finding of Fact.

7

*Id.* ¶¶ 4–6.

As a nonmedical prison administrator, Moyer was entitled to rely on the judgments of prison eyecare specialists in providing care to inmates. *Miltier v. Beorn*, 896 F.2d 848, 855 (4th Cir. 1990) (Prison personnel may rely on the judgments of medical providers concerning appropriate medical treatment to provide to an inmate). Moyer believed that Koenig had been provided the progressive lenses he sought and did not need additional assistance. Koenig provides no evidence to refute Moyer's declaration, or to show Moyer was subjectively aware that his need for oversized progressive eyeglasses had not been met. Without the requisite subjective knowledge, Moyer did not act with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 846 (1994).

Baucom is part of a clinical team which monitors the clinical care provided to inmates through contracts and subcontracts for medical services. Declaration of Sharon Baucom, ECF No. 23-7 ¶ 2. Optometry and ophthalmology are specialty services provided through subcontracts, and it is the responsibility of the medical contractor to provide prescription eyewear required by an inmate, including transition eyewear and frames of all sizes. *Id.* Baucom explains that DPSCS facilities house more than 19,000 inmates. Inmate correspondence to Baucom is reviewed by a staff member who directs it to the Area Contract Operations Manager ("ACOM"), a registered nurse assigned to the region where the inmate is housed, for investigation. The ACOM contacts the medical contractor as part of the investigation. *Id.* ¶¶ 4–5. If an inmate files an ARP request or appeal concerning medical care, it is directed to the ACOM for review, investigation, and to ensure the terms of the contract between the DPSCS and contractor are followed. *Id.* ¶ 6. Baucom is "only made aware of any specific complaints if there is a conflict between the contractor and the ACOM about the care to be provided. In this case, that situation did not arise." *Id.* ¶ 7. Baucom

8

states that she was unaware of Koenig's concerns until she received a letter on September 21, 2020 from the Maryland Board of Physicians notifying her that Koenig had filed a complaint against her. The complaint was dismissed after Baucom responded to the Board's inquiry. Once aware of Koenig's concerns, Baucom "personally discussed his care with the medical contractors and instructed that he should be given the specific transition lenses with oversized frames that he requested and had been approved by the Ophthalmologist previously." *Id.* ¶ 8.

Under these undisputed facts, viewed in a light most favorable to Koenig, there is no evidence that Moyer or Baucom possessed the requisite subjective knowledge of Koenig's medical concerns to support a claim of deliberate indifference. Accordingly, Moyer and Baucom are entitled to summary judgment in their favor as a matter of law.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, Defendants' Motion is granted and judgment will be entered in favor of Moyer and Baucom. A separate Order follows.

Dated this ⟨30⟩ day of November, 2021.

FOR THE COURT:

James K. Bredar
Chief Judge

9